**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Case No. 26-42179-357** |
| | ) | **Chapter 11** |
| **BROADWAY FORD TRUCK SALES, INC.,** | ) | |
| | ) | **Hearing Date: May 21, 2026** |
| **Debtor.** | ) | **Hearing Time: 1:30 p.m.** |
| | ) | |
| | ) | **Related to Doc. 3** |

# INTERIM ORDER AUTHORIZING (I) DEBTOR'S USE OF CASH COLLATERAL PURSUANT TO § 363 OF THE BANKRUPTCY CODE AND THE TERMS OF THE STIPULATION BETWEEN DEBTOR AND FORD MOTOR CREDIT COMPANY LLC, AND (II) SETTING FINAL HEARING FOR USE OF CASH COLLATERAL

The *Motion for Entry of Interim and Final Order Authorizing (I) Debtor's Use of Cash Collateral Pursuant to* § 363 *of the Bankruptcy Code and the terms of the Stipulation between Debtor and Ford Motor Credit Company LLC, and (II) Setting Final Hearing for Use of Cash Collateral* (the "Motion") of Broadway Ford Truck Sales, Inc. (the "Debtor") came before this Court for a preliminary hearing on May 21, 2026.

After giving due consideration to the Motion, the arguments made on the record, and the record and proceedings in this case (the "Chapter 11 Case"), the Court finds and concludes as follows:

A. The Court has jurisdiction over the Motion and issues raised therein pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

B. Appropriate notice of the preliminary hearing on the Motion was provided to creditors and parties-in-interest as required under Bankruptcy Rule 4001(b)(1)(C).

C. On May 18, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

D. On May 18, 2026, the Debtor filed the Motion seeking interim and final authorization to use Cash Collateral[1] on the terms set forth in the Stipulation by and between the Debtor and Ford Motor Credit Company LLC ("Ford Credit").

E. The terms and provisions of the Stipulation are incorporated herein by reference in their entirety.

F. The Debtor represents and warrants that the statements, admissions, stipulations, acknowledgements, agreements, and other provisions of the Stipulation are true and correct.

G. The Debtor agrees and acknowledges that Ford Credit has properly perfected first priority lien on substantially all of the Debtor's assets. Notice has been provided to all creditors claiming a potential interest in the Debtor's Cash Collateral.

H. Ford Credit consents to the Debtor's interim use of Cash Collateral on the terms set forth in the Stipulation, a copy of which is attached to the Motion and hereto as **Exhibit A**.

I. The Stipulation provides, among other things, conditions on the Debtor's use of cash, terms for payments providing certain adequate protection to Ford Credit, reporting and operational requirements, and additional terms more specifically set forth in the Stipulation.

J. Good cause has been shown for the entry of this Order with respect to Debor's use of the Cash Collateral. The Debtor's abilities to operate, maintain its business, and maximize a return for its creditors require the availability of the Cash Collateral on and subject to the terms and conditions set forth in this Order. In the absence of the use of the Cash Collateral, the continued operation and maintenance of the Debtor's business may not be possible, and serious and irreparable harm to the Debtor, its estate, and its creditors would occur.

---

[1] Capitalized terms not expressly defined herein have the meaning ascribed to them in the Motion.

K. The Debtor has requested immediate entry of this interim Order pursuant to Bankruptcy Rule 4001(b)(2).

For the reasons stated on the record, and upon careful review of the record in this case, IT IS HEREBY ORDERED THAT:

1. The Motion (Doc. 3) is **GRANTED** on an interim basis as set forth herein.

2. Subject to the terms set forth in the Stipulation, the Debtor shall be permitted to use Cash Collateral in the amounts and for the purposes set forth in the Budget attached hereto as **Exhibit B**.

3. The terms of the Stipulation are approved in their entirety, which are incorporated by reference and so ordered, as modified by the following amendments:

a. The provisions of paragraphs 17 and 18 of the Stipulation shall immediately, upon entry of this Interim Order, become valid and binding upon the Debtor and Secured Party. With respect to other parties in interest identified in paragraphs 17 and 18 of the Stipulation, such parties shall be subject to the provisions of paragraph 19, but paragraphs 17 and 18 of the Stipulation shall not otherwise become binding on such other parties in interest until entry of a final Order approving the Motion.

b. Paragraph 14 is amended to delete the term "12:00 midnight" and replace it with "12:01 a.m. CST".

c. Paragraph 4.n. is amended to add the following to the start of Paragraph 4.n.: "Upon entry of a final Order approving this Stipulation."

d. Paragraph 4(i) is amended to delete the terms "No" and replace it with "During the Interim Period, none".

e. Paragraph 4.b. is amended to add the following to the end of paragraph 4.b.: "subject to a carve out for payment of quarterly United States Trustee fees, which amounts shall be included in the Budget".

4. The Debtor's use of Cash Collateral is contingent upon the Debtor's compliance with the terms of the Stipulation, including the Budget.

5. All Offsite Vehicles, other than Demos and Customer Contracted Vehicles, shall be returned to the dealership or such other location acceptable to Ford Credit in its sole discretion within two weeks of entry of this Order.

6. The Debtor is authorized to use the Cash Collateral in accordance with this Order through June 3, 2026 ("Interim Period").

7. By May 26, 2026, the Debtor shall submit a supplemental Budget, subject to Ford Credit approval, for the period from June 1, 2026, through June 3, 2026.

8. The Debtor is authorized and directed to comply with and perform all the terms and conditions of the Stipulation.

9. This Interim Order shall be immediately effective pursuant to Bankruptcy Rule 4001(b)(2).

10. A final hearing on the Motion shall be held on **June 3, 2026** at **1:30 p.m.** in Courtroom **5 North** of the United States Bankruptcy Court, Thomas F. Eagleton United States Courthouse, 111 S. Tenth Street, St. Louis, MO 63102.

11. Any objections to the Motion shall be filed with the Court and served by e-mail no later than June 1, 2026 upon Counsel for the Debtor: Thomas Riske, Carmody MacDonald, P.C., 120 South Central Ave., Suite 1800, St. Louis, MO 63105 (e-mail: thr@carmodymacdonald.com); Joseph Schlotzhauer, Office of the U.S. Trustee, 111 S Tenth St, Ste 6.353 St. Louis, MO 63102

(email joseph.schlotzhauer@usdoj.gov ); Counsel to Ford Credit: Angela Z. Miller, Phillips Lytle, LLP, One Canalside, 121 Main Street, Buffalo, NY 14203 (email: AMiller@phillipslytle.com) and Eric C. Peterson, Spencer Fane LLP, 1 N. Brentwood Boulevard, Suite 1200, Saint Louis, MO 63105 (email: epeterson@spencerfane.com).

12. The Debtor shall serve a copy of this Interim Order on the twenty largest unsecured creditors, all parties requesting notice, and the United States Trustee as required by Fed. R. Bankr. 4001(b)(1)(C).

Dated: May 22, 2026
St. Louis, Missouri
cjs

Brian C. Walsh
United States Bankruptcy Judge

Order Prepared by:

**Thomas H. Riske**
**Nathan R. Wallace**
Carmody MacDonald, P.C.
120 South Central Ave., Suite 1800
St. Louis, Missouri 63105
(314) 854-8600
(314) 854-8660 Fax
PROPOSED ATTORNEYS FOR DEBTOR

**Exhibit A**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | Case No. 26-42179 |
| | ) | |
| BROADWAY FORD TRUCK SALES, INC. | ) | Chapter 11 |
| | ) | |
| Debtor and Debtor-in-Possession. | ) | **STIPULATION FOR ENTRY OF AN INTERIM ORDER AUTHORIZING DEBTOR'S LIMITED USE OF CASH COLLATERAL AND SCHEDULING A FINAL HEARING** |

**INTRODUCTORY STATEMENT**

In connection with the above-captioned Debtor's ("**Debtor**") Motion for Use of Cash Collateral Pursuant to the Terms of Stipulation filed in connection herewith, Debtor and Ford Motor Credit Company LLC ("**Ford Credit**" or "**Secured Creditor**") have entered in the attached Stipulation for Entry of an Interim Order Authorizing Debtor's Limited Use of Cash Collateral and Scheduling a Final Hearing ("**Stipulation**") summarized as follows:

1. Entities with Interest in Cash Collateral: Ford Credit.

2. Purpose of Use of Cash Collateral: to permit Debtor to continue to operate its business, and to preserve and protect Ford Credit's Cash Collateral (as defined below).

3. Terms of Use of Cash Collateral: Debtor may use cash, including any Cash Collateral, between the Petition Date (as defined below) and **June 1, 2026** (the "**Interim Period**") in accordance with Debtor's Budget attached hereto as **Exhibit 1**.

4. Proposed Adequate Protection: Debtor's Cash Collateral use is conditioned upon, among other things, granting of Replacement Liens (as defined below) to Ford Credit, granting of super-priority liens to Ford Credit to the extent of diminution of value of its collateral pursuant to Section 507(b) of the Bankruptcy Code, continued access to Debtor's business property, continued possession and control of MSOs (as defined below) and keys to collateral Vehicles (as defined

below), execution of a letter of intent to sell Debtor's business by a date certain, immediate payment to Ford Credit upon Debtor's sale of Vehicles, required reporting, and the additional terms more specifically set forth in the attached Stipulation.

The undersigned certifying professional has read the accompanying Stipulation and the Cash Collateral Introductory Statement; to the best of my knowledge, information and belief, formed after reasonable inquiry, the terms of the relief sought in the Stipulation are in conformity with the Court's standards for granting such motions.

Dated: May 18, 2026

CARMODY MACDONALD P.C.

By: */s/ Thomas H. Riske*
Thomas H. Riske
120 S. Central Ave., Suite 1800
St, Louis, MO 63105

Attorney for Debtor (*application pending*)

**STIPULATION FOR INTERIM USE OF CASH COLLATERAL**

Debtor, Broadway Ford Truck Sales, Inc., the debtor and debtor-in-possession in the above-captioned case, by its proposed counsel Thomas H. Riske, Esq., and Ford Credit, by its counsel, Spencer Fane, submit this Stipulation ("**Stipulation**") and proposed order ("**Order**") seeking approval on an interim basis authorizing the Debtor to, *inter alia*, use cash collateral in which Ford Credit has a perfected security interest pursuant to Sections 363(c)(2) and 361 of title 11 of the United States Code (the "**Bankruptcy Code**") and Federal Rule of Bankruptcy Procedure 4001. In support of this Stipulation, the parties state as follows:

**RECITALS**

A. On May 18, 2026 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

B. Debtor remains in possession of its assets and continues to operate as a debtor-in-possession in accordance with Bankruptcy Code §§ 1107 and 1108. In such capacity, Debtor is acting as a fiduciary on behalf of its bankruptcy estate including all of its respective creditors and parties in interest (the "**Estate**").

C. The United States Trustee has not yet appointed an Official Creditors' Committee pursuant to Bankruptcy Code § 1102.

D. This Court has jurisdiction over these proceedings and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

E. Consideration of the Stipulation constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

F. Venue for this Chapter 11 case is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

G. Debtor owns and operates a new and used car dealership located at 812 E. Taylor Ave., St. Louis, MO 63147, selling new and used vehicles, servicing vehicles and selling parts.

H. Debtor asserts that the use of the Debtor's personal property which constitutes the Ford Credit Collateral (as defined below) and/or the proceeds of the Ford Credit Collateral (the

"**Cash Collateral**"), on a limited basis as set forth herein, is essential to the continued preservation and maximization of the Estate and the avoidance of immediate and irreparable harm thereto.

I. Debtor and the Secured Creditor have agreed to the terms set forth below for the purpose of, *inter alia*, the Secured Creditor consenting to the Debtor's use of Cash Collateral on a limited basis, in which the Secured Creditor possesses a perfected security interest, and providing adequate protection of the Secured Creditor's lien and security interest.

**STIPULATION**

**NOW, THEREFORE**, IT IS STIPULATED AND AGREED among the undersigned that:

1. All of the Recitals set forth above are incorporated herein by reference into this Stipulation, and Debtor represents and warrants to the Secured Creditor that the above statements are true and correct.

2. After consultation with its attorneys and financial advisors, Debtor – on behalf of itself and, subject solely to Paragraph 19 below, on behalf of its Estate – admits, stipulates, acknowledges, and agrees to the following:

   a. Ford Credit provided wholesale floor plan financing to Debtor pursuant to the following agreements and all other documents executed in connection therewith (collectively, the "**Ford Credit Loan Documents**"):

      1. Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement by Debtor in favor of Ford Credit dated December 18, 1997 pursuant to which Ford Credit agrees to establish and maintain for Debtor, a wholesale line of credit to finance new, used and demonstrator motor vehicles, and other vehicles, equipment, inventory and goods pursuant to the terms and conditions set forth therein ("**Wholesale Agreement**");

      2. Security Agreement by Debtor in favor of Ford Credit dated November 15, 2011 ("**Security Agreement**") pursuant to which Debtor grants Ford Credit a security interest in all of the following assets of Debtor

now owned or hereafter acquired and all products and proceeds thereof: equipment, furniture, fixtures, motor vehicles, accounts, instruments, chattel paper, general intangibles, contract rights, documents, service parts, goods and inventory (collectively, the "**Ford Credit Collateral**"). Ford Credit's security interest in the Ford Credit Collateral was (and remains) perfected by the filing of a UCC-1 financing statement with the Delaware Secretary of State on March 14, 2002 at number 20020873806 as amended and continued from time to time;

b. As of the Petition Date, Debtor owes Ford Credit not less than $33,675,691.06 pursuant to the Ford Credit Loan Documents, which amount includes floor plan principal of $32,869,483.72 as of April 24, 2026, plus outstanding wholesale charges in the amount of $220,092.29 as of April 1, 2026, plus TRAC lease buyouts in the amount of $586,115.05 (collectively, with all additional costs, expenses, and all other amounts due and owing under the Ford Credit Loan Documents as of the Petition Date[1] and all additional interest and expenses accruing thereafter, the "**Ford Credit Indebtedness**").

c. The Ford Credit Indebtedness is secured by a first priority properly perfected security interest and/or lien on the Ford Credit Collateral as provided for in the Ford Credit Loan Documents, including, without limitation, the Cash Collateral.

d. The security interest and lien on the Ford Credit Collateral granted pursuant to the Ford Credit Loan Documents are valid, binding, enforceable, non-avoidable, and perfected security interests and liens, and are not subject to any challenge or defense, including avoidance, reduction, offset, attachment, disallowance, disgorgement, counterclaim, surcharge, recharacterization, or subordination, pursuant to the Bankruptcy Code or applicable non-bankruptcy law, which such

[1] Including but not limited additional floor plan principal, interest, costs and expenses for vehicles in transit which are delivered to the dealership.

acknowledgement shall be binding on any subsequently appointed Chapter 7 Trustee.

e. The Ford Credit Loan Documents are valid and enforceable by Ford Credit against the Debtor.

f. The obligations under the Ford Credit Loan Documents constitute legal, valid, binding, and unavoidable obligations of Debtor, enforceable in accordance with their terms and conditions.

g. No offsets, challenges, defenses, claims, or counterclaims of any kind or any nature to any of the obligations under the Ford Credit Loan Documents exist, and no portion of such obligations is subject to avoidance, recharacterization, disallowance, or subordination pursuant to the Bankruptcy Code or other applicable law.

h. No offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code exist against Ford Credit, whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code) or arising under or in connection with: (a) any of the Ford Credit Loan Documents (or the transactions contemplated thereunder), (b) the obligations under the Ford Credit Loan Documents, (c) the security interests and liens in the Ford Credit Collateral, and/or (d) any other business dealings by and among Debtor, any affiliate of Debtor and Ford Credit.

i. As of the Petition Date, the Ford Credit Indebtedness constitutes an allowed, secured claim within the meaning of Bankruptcy Code §§ 506(a) and 502, together with accrued and unpaid interest, fees, attorneys' fees and related expenses, costs, and other charges of whatever nature owing in respect thereof.

j. Debtor has waived, discharged, and released any right to challenge any of the obligations under the Ford Credit Loan Documents, the collateral and security for such obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action against Ford Credit.

k. Any payments made on account of the obligations under the Ford Credit Loan Documents to or for the benefit of Ford Credit prior to the Petition Date were payments out of the Ford Credit Collateral and such payments did not diminish any property otherwise available for distribution to unsecured creditors.

l. Substantially all of Debtor's cash, including the cash in its deposit accounts, wherever located, whether as original collateral or proceeds of other Collateral, constitutes the Ford Credit's Cash Collateral (as such term is defined in section 363(a) of the Bankruptcy Code).

m. The Ford Credit Indebtedness is immediately due and payable.

n. Debtor will not seek post petition financing to be secured by any of the Ford Credit Collateral or otherwise seek to prime any Ford Credit lien(s).

3. Subject to the terms and conditions of this Stipulation and upon execution by the parties and the Court entering an order approving this Stipulation, Debtor may use cash, including any Cash Collateral, between the Petition Date and June 1, 2026 (the "**Interim Period**") strictly in accordance with and solely for the purposes identified in Debtor's Budget attached hereto as **<u>Exhibit 1</u>**. Debtor's total weekly disbursements shall not exceed the gross amount of the budgeted weekly disbursements identified on its Budget without the Secured Creditor's prior approval. The Budget provides for payment of the Debtor's post-petition expenses, including costs and expenses necessary to preserve, maintain and protect the Ford Credit Collateral, and payment of other necessary operating expenses necessary for Debtor's continued business operations. Debtor shall not use Cash Collateral for the payment of any prepetition obligations or claims, absent order of this Court after reasonable notice to the Secured Creditor, the U.S. Trustee, any statutory committee, and other parties in interest and an opportunity to be heard.

4. As adequate protection for the Secured Creditor's interest in the Ford Credit Collateral (including Cash Collateral), Debtor grants to Secured Creditor the following adequate protection:

a. Secured Creditor shall have valid and duly perfected replacement liens on and against (collectively, the "**Replacement Liens**") all property of Debtor, and any proceeds therefrom, whether presently owned or hereafter acquired, including but not limited to post-petition accounts, inventory, equipment and general intangibles (collectively, "**Post-Petition Collateral**").

b. In the event, and only to the extent of diminution in the Ford Credit Collateral, Ford Credit shall have a super priority claim pursuant to § 507(b) of the Bankruptcy Code that shall have priority over all priority claims and unsecured claims against Debtor and its Estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, over administrative expenses of the kinds specified in or ordered pursuant to §§ 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 546(c), 726(b), and 1114 of the Bankruptcy Code or otherwise.

c. One or more representatives of Ford Credit ("**Ford Credit Representatives**") shall be authorized to access and allowed to be present at the dealership premises occupied by Debtor during its hours of operation. At all times, Debtor shall continue to permit the Ford Credit Representatives to maintain possession or control of the original manufacturer's statement of origin ("**MSO**") or certificate of title, as applicable, and all keys to each and all vehicles owned by Debtor ("**Vehicles**" and each a "**Vehicle**"). Keys will be released to a representative designated by the Debtor and approved by Ford Credit to allow for test drives of the Vehicles, after which the keys will be immediately returned to the Ford Credit Representatives. Keys and the MSO or certificate of title to a Vehicle which is sold in the ordinary course of business will be released to a representative designated by the Debtor upon (1) proof that a contract of sale has been signed by the buyer and

seller, verifiable proof of the cost of any upfit applied to the Vehicle that remains unpaid ("**Unpaid Upfit Cost**"), and the source and amount of funding is acceptable to Ford Credit, and (2) with respect to the sale of (i) any new or used Vehicle financed under the Wholesale Agreement, a certified check payable to Ford Credit has been delivered to the Ford Credit Representatives in an amount equal to the floor plan payoff owed with respect to such Vehicle being sold, plus half of the excess proceeds from the sale of such Vehicle after satisfaction of the floor plan payoff amount and Unpaid Upfit Cost , or (ii) any other new or used Vehicle, a certified check payable to Ford Credit has been delivered to the Ford Credit Representatives in an amount equal to half of the retail sale price (and 75% in the event of non-retail sales), which sale price shall be at least 90% of the value of the Vehicle as agreed to by the parties on or about the date of this Stipulation (unless Ford Credit agrees to a lesser amount in writing), it being agreed that Debtor shall be entitled to retain for use pursuant to the terms of the Budget the first $100,00 from the sale of non-financed Vehicles. The Ford Credit Representatives shall be permitted to conduct daily audits of Vehicle inventory and transactions at Debtor's premises and wherever else such Vehicles may be located.

d. Debtor shall remit the proceeds of sales to Secured Creditor -

   i. on each Vehicle sold in the ordinary course of business, in accordance with subparagraph (c) above; and

   ii. on Vehicles sold other than in the ordinary course of business, or other assets sold, in an amount and form acceptable to Ford Credit after notice and hearing.

e. For any sold Vehicles which are financed by the consumer through Ford Credit, Ford Credit shall be permitted to "net-fund" Debtor, meaning that it shall -be permitted to hold back the portion of the funding equal to the floorplan payoff and only remit to Debtor the positive difference, if any and subject to paragraphs 4(c)

and 4(d) above. In the event that there is a shortfall, between the amount financed and the floorplan payoff, such amount shall be due and payable by Debtor to Ford Credit, in accordance with paragraphs 4(c) and 4(d)(i) of this Stipulation. This paragraph shall be applicable retroactively to permit the setoff for any such monies being held prior to this entry hereof.

f. Debtor shall be permitted to retain all service fee receivable proceeds for non-warranty work and utilize them consistent with the terms of the attached Budget.

g. Ford Credit's acceptance of any payments from Debtor shall be without prejudice and shall not constitute a waiver of any of Ford Credit's rights or remedies under the Ford Credit Loan Documents.

h. Until the repayment in full of the Ford Credit Indebtedness, interest shall continue to accrue from and after the Petition Date at the default rate provided for in the Ford Credit Loan Documents.

i. No costs or expenses of administration of these Chapter 11 cases shall be charged against or recovered from or against any Ford Credit Collateral pursuant to section 105 or section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of Ford Credit and no such consent shall be implied from any other action, inaction, or acquiescence of Secured Creditor.

j. By 5:00 p.m. on June 12, 2026, the Debtor shall obtain or cause to be obtained and file with the Court an asset purchase agreement or binding letter of intent (“**LOI**”) for the sale of the Debtor's dealership and assets, in form and content reasonably acceptable to Secured Creditor. The LOI must (i) contain terms customary for the purchase of an automobile dealership, including a deadline by which application must be made to Ford Motor Company and Ford Motor Credit Company LLC for approval of the transaction, (ii) provide for an earnest money deposit, and if necessary, an unsecured post-petition financing component in an amount reasonably sufficient to bridge to a closing, and (iii) contemplate a purchase and

sale agreement between the Debtor and the prospective purchaser to be fully executed by June 15, 2026 (a **"Conforming LOI"**). Secured Creditors reserve all rights with respect to the adequacy of the Conforming LOI.

k. By 5:00 p.m. on May 18, 2026, the Debtor shall provide to Ford Credit a schedule of all Vehicles which are in the possession of a third-party ("**Offsite Vehicles**" and each an "**Offsite Vehicle**"). The schedule shall include the following information on each Offsite Vehicle: i) vehicle identification number ("**vin**"), ii) the name, address and either telephone number or e-mail address of the third-party in possession, iii) the reason it is in the possession of the third-party, iv) whether it is subject to a customer contract or purchase order, and if so, provide Ford Credit a copy of the applicable customer contract or purchase order ("**Customer Contracted Vehicles**"), v) for each of the Customer Contracted Vehicles, the consideration to be paid by the customer, whether a deposit has already been paid to the Debtor or third-party, and if so, the amount of the deposit, and vi) the alleged outstanding amount owed to the third-party by the Debtor.

l. Offsite Vehicles shall be handled as follows:

   i. Offsite Vehicles which are demonstrator vehicles or service vehicles (collectively, "**Demos**") shall be returned to the dealership on or before May 1, 2026;

   ii. Offsite Vehicles which are Customer Contracted Vehicles shall be permitted to remain offsite and sold pursuant to the terms of 4.c.-e. herein.

   iii. The Order approving this Stipulation shall include a "So Ordered" provision requiring all Offsite Vehicles other than Demos and Customer Contracted Vehicles be returned to the dealership or such other location acceptable to Ford Credit in its sole discretion within two weeks of entry of the Order Approving this Stipulation.

m. In addition to the other payments to Ford Credit provided for herein, Debtor shall pay Ford Credit an additional adequate protection payment of $40,000 on the 15th day of each month; provided however, Ford Credit waives its right to collect the $40,000 adequate protection payment during the Interim Period.

n. Ford Credit shall be entitled to receive the net proceeds of any recoveries of Chapter 5 causes of action (i.e. preference or fraudulent conveyance proceedings) against Moneywell Group, LLC, Gulfstream Capital Solutions or other merchant or factor of the Debtor.

o. Debtor shall continue to provide Secured Creditor with all financial reporting due under the Ford Credit Loan Documents, and in addition shall provide the following reporting:

   i. weekly variance reporting of actual spending compared to the prior week Budget expense projection, by Wednesday of each week,

   ii. proof of insurance in form and content acceptable to Secured Lender, naming Secured Lender as an additional insured on the Ford Credit Collateral,

   iii. daily bank operating account reporting like that provided prior to the Petition Date,

   iv. monthly dealership financial statements,

   v. proof of payoff of balances due on all Trade-In vehicles on Wednesday of each week for the prior week,

   vi. proof of payment of post-petition sales tax;

   vii. presentation to Ford Credit Representatives of the daily mail for its review and turnover to Ford Credit of payments/checks for sold Vehicles.

5. Debtor's stipulations, admissions, acknowledgements, and agreements set forth in paragraphs 2, 3 and 4 above are binding on Debtor and, subject solely to Paragraph 19 below, its Estate, and all its respective creditors and parties in interest.

6. Debtor shall not use, and shall not permit the use of, any Cash Collateral in a manner or for a purpose other than those consistent with this Stipulation and the Budget.

7. Upon receipt of a trade-in vehicle from a customer for which a payoff is due ("**Trade-In**"), to the extent the Trade-In is received in connection with the sale of a Vehicle by Debtor, the payoff shall be remitted by Debtor to the applicable finance company within seven (7) days of receipt of the Trade-In. Upon Trade-In such vehicle shall be a used Vehicle under this Stipulation and subject to all provisions herein, including, those applicable to sales, keys, titles and MSOs set forth in paragraphs 4(c) and 4(d) herein.

8. The automatic stay imposed by Bankruptcy Code § 362(a) is hereby modified to permit all terms approved under this Stipulation.

9. This Stipulation shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the Replacement Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Replacement Liens.

10. Upon entry of an order approving this Stipulation, Secured Creditor shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by Debtor which in any way relates to the Ford Credit Collateral. Notwithstanding the foregoing, Debtor is authorized and directed to take all necessary actions to cause Secured Creditor to be named as additional insured and loss payee on each insurance policy maintained by Debtor which in any way relates to the Ford Credit Collateral.

11. Reserved.

12. Except as otherwise expressly provided for in this Stipulation, Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Ford Credit Collateral without the prior written consent of Ford Credit (and no such consent shall be implied, from any other

action, inaction or acquiescence by Ford Credit or an order of this Court, except for sales, transfers, leases or uses of Debtor's inventory in the ordinary course of its business, which for the avoidance of doubt does not include any sales of inventory by auction, wholesale, in bulk or to another dealer). Until such time as the Ford Credit Indebtedness has been paid in full in accordance with the Ford Credit Loan Documents, Debtor shall remit to Ford Credit, or cause to be remitted to Ford Credit, all proceeds of the Ford Credit Collateral for application against the Ford Credit Indebtedness.

13. The term "**Event of Default**" shall mean (i) a breach by Debtor of any term of this Stipulation, (ii) a breach by Debtor of the terms of any agreement approved by the Court by and among its secured creditors for the use of its cash collateral; (iii) if the actual weekly payments, spending, expenses of the Debtor by line item or in the aggregate exceeds the expenses projected in the Budget for that week by more than ten percent (10%); or (iv) if the Debtor and Ford Credit fail to agree to the terms of a Budget for any subsequent period reasonably acceptable to Ford Credit on or before expiration of the Interim Period, which reasonably acceptable Budget must include, maintaining the adequate protection payments provided to Ford Credit herein and making payments necessary to continue ongoing operations while maintaining positive cash flow.

14. Unless otherwise ordered by the Court in accordance with the terms hereof, as of 12:00 midnight prevailing Central Time on the 2nd business day after the date the Secured Creditor files a notice of an Event of Default (a "**Default Notice**") on the docket of the above-captioned Chapter 11 case (such period, the "**Default Notice Period**"), or any other Termination (as defined herein), the automatic stay under Bankruptcy Code § 362 will be automatically lifted without further order of this Court to allow Secured Creditor to take any and all actions permitted by law, as if no case were pending under the Bankruptcy Code, and Debtor shall voluntarily surrender the Ford Credit Collateral to Ford Credit. Upon expiration of the Default Notice Period, Debtor shall be prohibited from: (a) using Cash Collateral, including accounts receivable, inventory, and the proceeds thereof, in which Secured Creditor has an interest, or (b) obtaining credit or incurring of

indebtedness secured by a lien or security interest that is equal or senior to a lien or security interest held by Secured Creditor.

15. In addition, subject to Paragraph 20 below, the Debtor's right to use Cash Collateral shall terminate immediately upon the earliest of the: (a) expiration of the Default Notice Period and lifting of the automatic stay as set forth above, or (b) conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code (either, a "**Termination**").

16. The entry of this Stipulation is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Secured Creditor's right to seek any other or supplemental relief in respect of the Debtor; (b) any of the rights of Secured Creditor under the Bankruptcy Code or under applicable non-bankruptcy law, including the right to (i) request modification of the automatic stay of Bankruptcy Code § 362 or (ii) propose, subject to the provisions of Bankruptcy Code § 1121, a chapter 11 plan of reorganization; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of Secured Creditor.

17. Immediately upon entry of an Order approving this Stipulation by the Court, the terms and provisions of this Stipulation shall become valid and binding upon and inure to the benefit of the Debtor, the Secured Creditor, all other creditors of the Debtor, any statutory committee that may be appointed in this Chapter 11 case, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in this case, any successor case, or upon dismissal of this Chapter 11 case or successor case.

18. This Stipulation shall be binding upon any subsequently appointed or elected trustee in this case or a successor case under Chapter 7 of the Bankruptcy Code.

19. All rights of any creditor, official committee (if any) and/or party in interest to commence an adversary proceeding, contested matter, or other action asserting any objection, claim or cause of action, based on any grounds or theory whatsoever (whether legal or equitable), against Secured Creditor, including without limitation, any objection, claim or cause of action challenging or objecting to the amount, allowance, validity, enforceability, priority or perfection of Secured Creditor's claims or liens (any such proceeding or action, a "**Lien Challenge**"), are

expressly reserved for a period of sixty (60) calendar days following entry of this Stipulation ("**Challenge Period**"). From and after the sixty-first (61st) calendar day following entry of this Stipulation, unless the Challenge Period is extended by order of this Court, the Debtor's stipulations contained herein shall become binding on the Estate and Trustee appointed in this Case, all creditors and parties in interest, and thereafter all such creditors and parties in interest shall be forever barred from commencing a Lien Challenge on behalf of itself or the Estate.

20. Entry of an order approving this Stipulation shall be interim, and such order shall not be a final order for authorization of use of Cash Collateral, and shall expire if not extended or superseded by subsequent order of this Court on or before June 1, 2026, or such later date as agreed by Debtor and Secured Creditor and approved by the Court. To the extent this Stipulation expires without being extended or superseded by further order of this Court, the Debtor's ability to use Cash Collateral provided hereunder shall immediately cease; *provided* for the avoidance of doubt, in the event of such expiration, Debtor's stipulations herein on behalf of itself and, subject solely to Paragraph 19 above, on behalf of its Estate shall remain in full force and effect.

21. Entry of an order approving this Stipulation does not validate the use of Cash Collateral by the Debtor between the Petition Date and the date of entry of this Order. The Debtor shall, within seven (7) calendar days of the entry of this Order, account to all parties in interest in this case by filing herein a full and understandable accounting of all cash collateral received by Debtor since the Petition Date; providing confirmation of the deposit of all such proceeds into the debtor in possession account(s) that Debtor has established (any such account, a "**DIP Account**"); and identifying each and every expenditure made from each and every DIP Account since the date of filing to the date the accounting is provided.

22. The stipulations contained herein concerning the validity, perfection and priority of the liens held by Secured Creditor in any Ford Credit Collateral (including Cash Collateral) and/or Post-Petition Collateral shall be binding on any other creditor asserting (or on whose behalf is asserted) an alleged lien or security interest in any such collateral from and after the date hereof, subject solely to Paragraph 19 above.

23. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Stipulation.

24. This Stipulation is made as of the 18th day of May, 2026.

WHEREFORE, the Debtor and Secured Party respectfully request that the Court enter an order granting the relief requested in this Stipulation, and such other and further relief as is just and proper.

Dated: May 18, 2026

SPENCER FANE

By: */s/ Eric Peterson*
Eric Peterson

Attorneys for Ford Motor Credit Company LLC

CARMODY MACDONALD P.C.

By: */s/ Thomas H. Riske*
Thomas H. Riske

Attorney for Debtor

**EXHIBIT 1**

(Budget)

**Broadway Ford Truck Sales, Inc.**
**Preliminary Cash Flow Forecast**
**Cash Basis**

| | Est Week End 5/24/26 | Est Week End 5/31/26 |
|---|---|---|
| **See cash collateral recap at bottom of page** | | |
| **Sales receipts** | | |
| New truck sales | 852,988 | 852,988 |
| Used truck sales | 40,405 | 40,405 |
| F&I sales | 4,141 | 4,141 |
| Parts sales | 184,101 | 184,101 |
| Service sales | 95,886 | 95,886 |
| **Total sales receipts** | **1,177,521** | **1,177,521** |
| **Sales related disbursements** | | |
| New truck COGS - to Ford | 831,664 | 831,664 |
| Used truck COGS - to Ford | 38,907 | 38,907 |
| F&I COGS | - | - |
| Parts COGS | 56,235 | 152,235 |
| Service COGS | 20,136 | 20,136 |
| **Total sales related disbursements** | **946,941** | **1,042,941** |
| **Net sales related cash flow** | **230,579** | **134,579** |
| **Operating disbursements** | | |
| Advertising / promotion | - | 30,474 |
| Bad debts | - | - |
| Bldg maintenance | 2,000 | 2,000 |
| Data processing | - | - |
| Deductions | - | - |
| Delivery expenses | 1,422 | 1,422 |
| Demo expense | - | - |
| Depreciation | - | - |
| Discounts | - | - |
| Documentation fees | - | - |
| Employee benefits | - | - |
| Equip/vehicle maint | 500 | 500 |
| Floor plan interest | - | - |
| Free service | - | - |
| Freight | - | - |
| Fuel | 1,000 | 1,000 |
| Inventory control | - | - |
| Insurance | - | - |
| Lease payments | - | - |
| Loaner lease | 349 | 349 |
| Misc | - | - |

| | Est Week End 5/24/26 | Est Week End 5/31/26 |
|---|---|---|
| Mobile unit | 2,318 | 2,318 |
| Office supplies | - | 577 |
| Other | - | - |
| Pension | - | - |
| Policy adj | - | - |
| Postage | - | 157 |
| Prof & service fees | 16,830 | - |
| Rollback | 723 | 723 |
| Payroll & related | 227,000 | 60,000 |
| Supplies | 13,781 | - |
| Tax | 686 | 686 |
| Revolution expense | - | - |
| Telephone | - | - |
| Tools & supplies | - | - |
| Training | - | - |
| Travel & entertainment | 206 | - |
| Utilities | 5,230 | - |
| **Operating disbursements** | **272,046** | **100,207** |
| | | |
| **Bankruptcy specific costs** | | |
| Legal & professional fees | - | - |
| Monthly payment to Ford per stipulation | - | - |
| Interest for vehicles sold - to Ford | 15,722 | 15,722 |
| Profit (pre-commission) split - to Ford | 2,853 | 2,853 |
| **Total bankruptcy specific costs** | **18,575** | **18,575** |
| | | |
| **Operating cash flow** | **(60,042)** | **15,797** |
| | | |
| **Other cash flow** | | |
| Credit card, bank fees, other | (2,918) | (2,918) |
| Proceeds from sales of nonfloorplan vehicles | 33,000 | 34,000 |
| Net Ford incentives | - | |
| Conditional - Return excess RIM inventory | | - |
| **Other cash flow** | **30,082** | **31,082** |
| | | |
| **Weekly cash flow activity** | **(29,959)** | **46,880** |
| | | |
| **Cash collateral** | | |
| **Beginning cash collateral** | **30,015** | **56** |
| Weekly cash flow activity per above | (29,959) | 46,880 |
| Other funds | - | - |
| DIP financing | | |
| **Ending cash collateral** | **56** | **46,936** |