**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Case No. 26-42179-357** |
| | ) | **Chapter 7** |
| **BROADWAY FORD TRUCK SALES, INC.,** | ) | |
| | ) | **Objection Deadline: October 15, 2026** |
| | ) | **Hearing Date: October 28, 2026** |
| **Debtor.** | ) | **Hearing Time: 10:00 a.m. (CT)** |
| | ) | |

**FIRST AND FINAL FEE APPLICATION OF FOLEY & LARDNER LLP FOR COMPENSATION OF PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED AS COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE FINAL PERIOD FROM JUNE 9, 2026, THROUGH JULY 30, 2026**

| | |
|---|---|
| Name of Applicant: | Foley & Lardner LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | July 23, 2026, effective as of June 9, 2026 [Docket No. 151] |
| This is a(n): __ monthly __ interim X final application | |

| **Final Fee Period** | |
|---|---|
| Period for which Compensation and Expense Reimbursement are Sought in this Final Fee Application: | June 9, 2026, through July 30, 2026 |
| Total Amount of Compensation and Expense Reimbursement Sought to be Allowed on a Final Basis: | $93,356.91 |
| Total Amount of Compensation Sought to be Allowed on a Final Basis: | $93,056.91[1] |
| Total Amount of Expense Reimbursement Sought to be Allowed on a Final Basis: | $300.00 |

[1] This amount reflects Foley's voluntary reduction of $30,000.00 in compensation billed in this case for the benefit of the Committee (the "Voluntary Fee Reduction"). For the avoidance of doubt, Foley is not seeking reimbursement for the Voluntary Fee Reduction.

| | |
|---|---|
| Total Amount of Compensation and Expense Reimbursement Sought on a Final Basis that Has Been Allowed and Paid: | $0.00 |
| Compensation Sought on a Final Basis and Already Paid but Not Yet Allowed: | $0.00 |
| Blended Rate in this Final Period for Attorneys: | $757.62 |
| Blended Rate in this Final Period for All Paraprofessionals: | $420.00 |
| Blended Rate in this Final Period for All Timekeepers: | $694.97 |

**Prior Fee Applications:**

None.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Case No. 26-42179-357** |
| | ) | **Chapter 11** |
| **BROADWAY FORD TRUCK SALES, INC.,** | ) | |
| | ) | **Objection Deadline: October 15, 2026** |
| | ) | **Hearing Date: October 28, 2026** |
| **Debtor.** | ) | **Hearing Time: 10:00 a.m. (CT)** |
| | ) | |

**FIRST AND FINAL FEE APPLICATION OF FOLEY & LARDNER LLP FOR COMPENSATION OF PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED AS COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE FINAL PERIOD FROM JUNE 9, 2026, THROUGH JULY 30, 2026**

Foley & Lardner LLP ("Foley"), counsel for the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11 case (the "Chapter 11 Case") of Broadway Ford Truck Sales, Inc. (the "Debtor"), hereby files its first and final fee application (this "Application") for the final period from June 9, 2026, through and including July 30, 2026 (the "Final Fee Period") for allowance and approval, on a final basis, of all compensation for professional services rendered by Foley during the Final Fee Period in the amount of $93,056.91[2] and for reimbursement of its actual and necessary expenses in the amount of $300.00 incurred during the during the Final Fee Period; and (iii) allowance of these unpaid amounts as Chapter 11 administrative expenses pursuant to Section 503 of the Bankruptcy Code. In support of this Application, Foley respectfully represents as follows:

[2] This amount reflects Foley's voluntary reduction of $30,000.00 in compensation billed in this case for the benefit of the Committee (the "Voluntary Fee Reduction"). For the avoidance of doubt, Foley is not seeking reimbursement for the Voluntary Fee Reduction.

## RELIEF REQUESTED

1. This Application has been prepared in accordance with sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Eastern District of Missouri (the "Bankruptcy Local Rules"), *Guidelines for Compensation of Professionals and Reimbursement of Expenses* attached as Appendix to the *Procedures Manual* (the "Guidelines for Compensation"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "Fee Guidelines"), and the *Order Authorizing the Retention and Employment of Foley LLP as Counsel for the Official Committee of Unsecured Creditors, Effective as of April 8, 2025* [Docket No. 639] (the "Retention Order").

2. Foley requests the Court (i) approve all fees and expenses incurred by Foley during the Final Fee Period and (ii) approve the allowance of these fees and expenses as Chapter 11 administrative expenses pursuant to Section 503 of the Bankruptcy Code.

## JURISDICTION

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PRELIMINARY STATEMENT

4. The Committee's efforts in this Chapter 11 Case were essentially condensed into a one-week case that was then followed by a dispute regarding the conversion or dismissal of the Chapter 11 Case. Foley's representation of the Committee reflected the fact that the Committee came into the Chapter 11 Case at a time that required significant input and effort to find a potential sale and/or reorganization path for the Debtor in a very short period of time. Once it became clear

that neither a sale nor a reorganization was possible, the Committee's efforts pivoted to setting this Chapter 11 Case up for a value-maximizing alternative. Those efforts were focused on converting the Chapter 11 Case to one under Chapter 7 of the Bankruptcy Code to allow a chapter 7 trustee to pursue recoveries for the benefit of all creditors – a path that both the Debtor and Ford Motor Credit fought against.

5. In that one-week timeline, Foley focused on the following items: (a) ensuring that unsecured creditors were not harmed by any orders entered by the Court; (b) reviewing and analyzing the Debtor's sale process to determine if a going concern sale would maximize value for the benefit of all creditors; (c) analyzing the Debtors' Schedules and Statements (*see* Docket No. 93) (the "Schedules and Statements") to determine what assets may be recoverable for the benefit of unsecured creditors; and (d) obtaining and analyzing data from the Debtor necessary for the Committee to make informed decisions with respect to the future of the Chapter 11 Case.

6. When it became clear that the Debtor could not continue in Chapter 11, the Committee and Foley fought to have this Chapter 11 Case converted to one under Chapter 7 – allowing for a Chapter 7 trustee to pursue the various causes of actions available for potential recoveries to general unsecured creditors. Ultimately, the Court agreed with the Committee's position and the Ch. 7 Trustee filed a notice stating that there are anticipated recoveries for unsecured creditors.

## A. Formation of the Committee and Foley's Engagement

7. Upon the Committee's formation on June 4, 2026 (*see* Docket No. 76, as modified by Docket No. 78), the Committee members began working to represent the interests of unsecured creditors in the Chapter 11 Case. In doing so, the Committee began communicating with potential

legal counsel and engaged Foley, as lead restructuring counsel, and Summers Compton Wells LLC ("SCW"), as local counsel, on June 9, 2026.

8. On the same date as their engagement by the Committee, Foley immediately acted to represent the interest of unsecured creditors. This was important because the Debtor and Ford Motor Credit Company LLC ("Ford Motor Credit") were in the process of negotiating and finalizing the Debtor's continued use of cash collateral. A final hearing on the Debtor's continued used of cash collateral was scheduled for June 10, 2026.

**B. Cash Collateral and Investigation Efforts**

9. To ensure unsecured creditors' interests were properly represented in any subsequent cash collateral orders, Foley began conversations with both the Debtor's and Ford Motor Credit's counsel. To allow sufficient time for these negotiations to occur, the Committee prepared and filed *The Official Committee of Unsecured Creditors' Emergency Motion to Continue Hearing on Cash Collateral Motion* [Docket No. 84] (the "CC Continuance Motion") on June 9, 2026 – the same date that Foley was retained by the Committee. Utilizing this additional time, the Committee, the Debtor, and Ford Motor Credit negotiated the *Third Interim Order Authorizing (I) Debtor's Use of Cash Collateral Pursuant to § 363 of the Bankruptcy Code and the terms of the Stipulation between Debtor and Ford Motor Credit Company LLC, and (II) Setting Final Hearing for Use of Cash Collateral* [Docket No. 102] (the "Third Interim CC Order").

10. Concurrently with negotiating the Third Interim CC Order, Foley was performing its diligence on the Debtor and its business and assets. On June 10, 2026, the Committee delivered an initial information request list to the Debtor's counsel and held conversations regarding, among other things, the Committee's information request, the status of the Debtor's sale process, and other background information related to the Debtor and its business. The Committee also reviewed

and analyzed the Debtor's Schedules and Statements to determine the scope of the Debtor's assets and potential recoveries for the benefit of unsecured creditors.

11. Utilizing this work and on June 15, 2026, the Committee filed the *Official Committee of Unsecured Creditors' Limited Objection to Debtor's Motion for Use of Cash Collateral* [Docket No. 100] (the "Committee Limited Objection"). In the Committee Limited Objection, the Committee supported the Debtor's continued use of cash collateral but in a manner that did not prejudice unsecured creditors or drive the Chapter 11 Case into administrative insolvency.

12. While the Committee was negotiating a consensual final cash collateral order and performing its initial analysis, Ford Motor Credit filed its *Notice of Default* [Docket No. 101] (the "Notice of Default"). The Notice of Default stated that multiple defaults occurred and remained outstanding under the previously entered cash collateral orders and requested that the Debtor surrender its collateral to Ford Motor Credit. *See id.* While working to resolve Ford Motor Credit's issues set forth in the Notice of Default, the Debtor informed the Committee that the Debtor ceased all operations on the morning of June 16, 2026 and were likely going to file a motion to dismiss the Chapter 11 Case – a decision the Committee did not agree with.

## C. Fight for the Conversion of the Chapter 11 Case

13. On July 2, 2026, the Debtor filed its *Motion to Dismiss* [Docket No. 132] (the "Motion to Dismiss"). The Committee did not agree with the Debtor's proposed path and attempted to work with the Debtor and Ford Motor Credit to have the Chapter 11 Case converted to one under Chapter 7 – the only path that could provide a potential recovery for unsecured creditors. As such, the Committee prepared and filed the *Objection of the Official Committee of Unsecured Creditors to Debtor's Motion to Dismiss* [Docket No. 147] (the "Committee Dismissal

Objection"). At a contested hearing, the Committee argued for the conversion of the Chapter 11 Case to one under Chapter 7 of the Bankruptcy Code. The Court entered which was agreed to by the Court. On July 30, 2026, the Court entered the *Order Denying Motion to Dismiss and Granting Motion to Convert Case to Chapter 7* [Docket No. 160] (the "Conversion Order"), which converted this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code as of July 30, 2026.

**BACKGROUND**

14. On May 18, 2026 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Missouri (the "Court"). On June 4, 2026, the United States Trustee filed the *Notice of Appointment of Official Unsecured Creditors' Committee* [Dkt. No. 76], as amended on June 8, 2026 [Dkt. No. 79], forming the Committee.

15. Tracy A. Brown was appointed to serve as the Chapter 7 Trustee (the "Ch. 7 Trustee") for this case and the benefit of the Debtor's estate. On August 25, 2026, the Ch. 7 Trustee filed a *Notice* [Docket No. 184] stating that "assets have been recovered by the [Ch. 7 Trustee]" and setting November 23, 2026 as the date that creditors must file proofs of claim.

**THE COMMITTEE'S RETENTION OF FOLEY**

16. On June 9, 2026, the Committee retained Foley as lead restructuring counsel, and SCW, as local counsel.

17. On June 29, 2026, the Committee filed the *Application to Employ Foley & Lardner LLP as Counsel to the Official Committee of Unsecured Creditors and for Approval of Compensation Arrangements Related Thereto* [Docket No. 127] (the "Retention Application").

18. On July 20, 2026, the Committee filed the *Amended Declaration of Geoffrey S. Goodman in Support of Application to Employ Foley & Lardner LLP as Counsel to the Official*

*Committee of Unsecured Creditors and for Approval of Compensation Arrangements Related Thereto* [Docket No. 146] (the "Amended Goodman Declaration").

19. On July 23, 2026, the Court entered the Retention Order, authorizing Foley to provide the following services to the Committee:

a. advising the Committee in connection with its powers and duties under the Bankruptcy Code and the Bankruptcy Rules;

b. assisting and advising the Committee in its consultation with the Debtor and other parties-in-interest regarding the administration of this Chapter 11 Case;

c. attending meetings and negotiating with the representatives of the Debtor and other parties-in-interest;

d. assisting and advising the Committee in its examination and analysis of the conduct of the Debtor's affairs;

e. assisting and advising the Committee in connection with any sale of the Debtor's assets pursuant to section 363 of the Bankruptcy Code;

f. assisting the Committee in the review, analysis and negotiation of any chapter 11 plan(s) of reorganization or liquidation that may be filed and assisting the Committee in the review, analysis and negotiation of the disclosure statement accompanying any such plan(s);

g. assisting the Committee in analyzing the claims asserted against and interests asserted in the Debtor, in negotiating with the holders of such claims and interests, and in bringing, participating, or advising the Committee with respect to contested matters and adversary proceedings, including objections or estimations proceedings, with respect to such claims or interests;

h. assisting with the Committee's review of the Debtor's Schedules of Assets and Liabilities, Statement of Financial Affairs and other financing reports prepared by the Debtor, and the Committee's investigation of the acts, conduct, assets, liabilities, and financial condition of the Debtor and of the historic and ongoing operation of their businesses;

i. assisting the Committee in its analysis of, and negotiations with, the Debtor or any third party related to, among other things, cash collateral issues, financings, compromises of controversies, assumption or rejection of executory contracts and unexpired leases, and matters affecting the automatic stay;

j. taking all necessary action to protect and preserve the interests of the Committee, including (i) possible prosecution of actions on its behalf; and (ii) if appropriate, negotiations concerning all litigation in which the Debtor is involved;

k. preparing all necessary motions, applications, answers, orders, reports, replies, responses, and papers in support of positions taken by the Committee;

l. appearing, as appropriate, before this Court, the appellate courts, and the United States Trustee, and protect the interests of the Committee before those courts and before the United States Trustee;

m. investigating and analyzing the existence, extent, validity, enforceability, and priority of liens asserted against the Debtor, and participate as necessary in any action related to such investigation;

n. analyzing any other state law issues related to this Chapter 11 Case;

o. participating in any related investigation of the Debtor, the Debtor's affiliates, and/or the Debtor's secured lenders; and

p. taking all actions, including attending meetings, reviewing pleadings, preparing or filing pleadings and/or submitting reports that are related to items (a)-(o), review, analyze and respond to related pleadings or reports filed by other parties and participate at hearings on such pleadings or reports.

(Retention Application, ¶ 8.)

20. The Retention Order also authorized Foley to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with this Chapter 11 Case in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, and any other applicable procedures and orders of the Court including the Guidelines for Compensation.

**SUMMARY OF COMPLIANCE WITH L.R. 2016-1(B)**

21. Due to the short duration of the Final Fee Period, Foley has not yet filed any monthly or interim fee applications.

## SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

22. Foley seeks allowance on a final basis of compensation for professional services performed during the Final Fee Period of $93,056.91 and reimbursement of expenses incurred in connect with the rendition of such services in the amount of $300.00. The compensation sought during the Final Fee Period reflects Foley's voluntary reduction of $30,000.00 in fees.

23. There is no agreement or understanding between Foley and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in the Chapter 11 Case. During the Final Fee Period, Foley received no payment or promises of payment from any source for services rendered, or to be rendered, in any capacity whatsoever in connection with the matters covered by this Application.

24. The fees charged by Foley in the Chapter 11 Case are billed in accordance with Foley's existing billing rates and procedures in effect during the Final Fee Period. The rates Foley charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Case are no greater than the rates Foley charges for professional and paraprofessional services rendered in comparable bankruptcy and non-bankruptcy-related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy matters in a competitive national legal market.

## SUPPORTING DOCUMENTS

25. Attached hereto as **Exhibit A** is the Certification of Geoffrey S. Goodman, a partner of Foley (the "Goodman Certification"), regarding Foley's compliance with the Guidelines for Compensation and the Fee Guidelines.

26. Attached hereto as **Exhibit B** is a schedule of all Foley's attorneys and paraprofessionals who have performed services for the Committee during the Final Fee Period, the

capacities in which each individual is employed by Foley, the department in which each individual practices, the hourly billing rate charged by Foley for services performed by such individuals, and the aggregate number of hours expended in this matter and fees billed in connection therewith (the "Schedule of Professional Fees").

27. Attached hereto as **Exhibit C** is a schedule of the professional services rendered by Foley during the Final Fee Period, broken down by task code.

28. Attached hereto as **Exhibit D** is an itemized schedule of the expenses for which Foley is seeking reimbursement from the Final Fee Period and a summary specifying the categories of expenses included in the schedule and the total amount for each such expense category (the "Expenses").

29. Foley maintains computerized records of the time spent by all Foley attorneys and paraprofessionals in connection with the prosecution of this Chapter 11 Case, which are sorted by task codes. Attached hereto as **Exhibit E** is a copy of the invoice for the Final Fee Period as required under the Guidelines of Compensation (the "Invoice").

30. Foley discussed its rates, fees, and staffing with the Committee at its initial meeting with the Committee and has continued to discuss staffing and fees with the Committee throughout the Chapter 11 Case.

## SUMMARY OF SERVICES PERFORMED BY FOLEY DURING THE FINAL FEE PERIOD

31. During the Final Fee Period, Foley devoted substantial resources and rendered significant professional services focused on maximizing value for unsecured creditors. The following is a non-exhaustive summary of the professional services rendered by Foley during the Final Fee Period, broken down by task code. Detailed descriptions of these services, the amount

of fees incurred, and the amount of hours spent providing such services during the Final Fee Period are provided in the attached Exhibits.

**A. Case Administration (B110)**
**Fees: $28,291.88; Total Hours: 35.20**

- Drafted and filed administrative documents in the case.
- Reviewed and monitored docket and deadlines, including all pleadings, motions, responses, and notices filed by the Debtor and other parties.
- Holding routine meetings with the Committee members regarding the path of the Chapter 11 Case and open workstreams.
- Preparing diligence requests to obtain information from the Debtor.

**B. Asset Analysis and Recovery (B130)**
**Fees: $6,980.00; Total Hours: 7.30**

- Research and analyze potential alternatives to the Chapter 11 Case that would maximize potential recoveries for unsecured creditors.
- Correspondences with the Debtor and Ford Motor Credit regarding the next steps in the Chapter 11 Case.

**C. Asset Disposition (B130)**
**Fees: $1,375.00; Total Hours: 1.40**

- Analyze issues regarding the interests in the Debtor's assets and potential limitations on such proposed sales.

**D. Meetings with the Committee/Communications with Creditors (B150)**
**Fees: $235.00; Total Hours: 0.20**

- Attend Committee meetings.

**E. Fee/Employment Applications (B160)**
**Fees: $11,250.19; Total Hours: 23.40**

- Drafted and revised the Retention Application, this Application, and related pleadings.
- Addressing the Court's preliminary order with respect to the Retention Application.

**F. Other Contested Matters (B190)**
**Fees: $22,675.33; Total Hours: 31.30**

- Analyzing and researching issues related to the Motion to Dismiss, including drafting an objection to the same and request for conversion of the Chapter 11 Case to one under Chapter 7 of the Bankruptcy Code.

- Preparing for and participating in a contested hearing on the Motion to Dismiss, including preparing talking points.

**G. Financing/Cash Collections (B230)**
**Fees: $28,139.51; Total Hours: 35.10**

- Reviewing and analyzing pleadings related to the Debtor's cash collateral motion and related interim orders.

- Drafting and filing the CC Continuance Motion to allow the Committee sufficient time to review and comment on future cash collateral orders.

- Negotiating and drafting the Third Interim CC Order with the Debtor and Ford Motor Credit.

- Analyzing Ford Motor Credit's alleged liens on the Debtor's collateral.

- Drafting and filing the Committee Limited Objection.

- Analyzing the Notice of Default and engaging in communications with the Debtor and Ford Motor Credit regarding a potential resolution to the alleged defaults.

32. The professional services performed by Foley on behalf of the Committee during the Final Fee Period required an aggregate expenditure of approximately 133.90 hours by Foley's partners, counsel, associates, paraprofessionals, and other non-legal staff. Of the aggregate time expended, approximately 2.50 recorded hours were expended by a Foley Partner and approximately 131.40 recorded hours were expended by Foley Senior Counsel, Associates, and Paralegal.

33. During the Final Fee Period, Foley billed the Committee for time expended by attorneys based on hourly rates ranging from $440 to $1,175 per hour for attorneys and $420 for paralegals.

34. Allowance of compensation in the amount requested would result in a blended hourly billing rate for Foley attorneys in this Application of approximately $694.97 based on 133.90 recorded hours for attorneys at Foley's billing rates in effect at the time of the performance of services.

35. In connection with the foregoing services performed in the Final Fee Period, Foley prepared, on behalf of the Committee, all necessary motions, applications, orders, notices, responses, and other papers in support of positions taken by the Committee and in compliance with applicable law.

36. The professional services rendered during the Final Fee Period were necessary and appropriate to the representation of the Committee in this Chapter 11 Case. The professional services performed by Foley were in the best interests of the Committee and its constituency. Compensation for such services is commensurate with the complexity, importance, and nature of the issues and tasks that were involved in these cases. All of Foley's professional services were performed skillfully and efficiently.

**ACTUAL AND NECESSARY DISBURSEMENTS OF FOLEY**

37. As set forth in Exhibit G attached hereto, Foley has disbursed $300.00 as expenses incurred in providing professional services during the Final Fee Period through obtaining and filing *pro hac vice* documents with the Court.

38. These expenses are reasonable and necessary and were essential to the overall administration of the Chapter 11 Case.

39. Foley has made every effort to minimize its disbursements in the Chapter 11 Case. The actual expenses incurred in providing professional services were those that were necessary, reasonable, and justified under the circumstances to serve the needs of the Committee.

**REQUESTED COMPENSATION SHOULD BE ALLOWED**

40. Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. Section 330(a)(1) of the Bankruptcy Code provides that a Court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330(a)(3) also sets forth the criteria for the award of such compensation and reimbursement:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

41. In the instant case, Foley submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary and beneficial to preserving the rights of the Committee. The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Committee.

42. Foley further submits that this Application satisfies the factors for reasonableness of attorneys' fees from *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 718 (5th Cir. 1974), as outlined below:

a. **The Time and Labor Required**. Foley's attorneys and paraprofessionals have expended 133.90 hours during Final Fee Period in the representation of the Committee. All of the time spent was necessary and appropriate for the representation of the Committee in the Chapter 11 Case to ensure that the Debtor maximized the value of its estate to the benefit of the Debtor's creditors. This is especially true when considering the urgency of the tasks and issues that arose in the Chapter 11 Case during the Final Fee Period, including, among other things, ensuring that cash collateral orders did not prejudice unsecured creditors and fighting for the conversion of the Chapter 11 Case. Foley submits that the hours spent were reasonable given the size and complexity of these cases, the significant and often urgent legal and business issues raised, and the numerous pleadings filed in these cases. All of the services performed were necessary to assist the Committee in fulfilling their statutory duties and proceeding through this Chapter 11 Case in an efficient manner. Foley has additionally made every effort to avoid any unnecessary duplication of time or services.

b. **The Novelty and Difficulty of the Questions Involved**. This Chapter 11 Case involve a significant number of complex issues in the areas of restructuring, acquisitions, and corporate finance – all on an extremely short timeline.

c. **The Skill to Perform the Professional Services Properly**. Foley believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Foley's practice, and its creative approach to the resolution of issues have contributed to the successful administration of these cases under challenging circumstances and benefited the Committee. Due to the nature and complexity of the legal issues presented in these cases, Foley was required to exhibit a high degree of legal skill. Foley respectfully submits that its professionals have provided substantial benefits to the Committee during the Final Fee Period

d. **The Preclusion of Other Employment by the Professional Due to Acceptance of the Chapter 11 Case**. Due to the size of Foley's restructuring department, Foley's representation of the Committee did not preclude its acceptance of new clients.

e. **The Customary Fee**. The rates charged by Foley attorneys, paraprofessional, and other-non legal staff in this Chapter 11 Case are consistent with the rates charged by Foley in connection with non-

bankruptcy work. The professional fee sought herein are based upon Foley's normal hourly rates for services of this kind. Foley respectfully submits that the professional fees sought herein are not unusual given the magnitude and complexity of these cases and time expended in representing the Committee, and are commensurate with fees Foley has been awarded in other cases, as well with professional fees charged by other attorneys of comparable experience.

f. **Whether the Fee is Fixed or Contingent**. Foley's fees in this Chapter 11 Case are based upon the hourly billing rates of Foley's attorneys and paraprofessionals. As in all bankruptcy cases, however, pursuant to §§ 330 and 331 of the Bankruptcy Code, fees for professionals employed under § 327 of the Bankruptcy Code are subject to court approval and the availability of funds in the Debtor's estate. In this limited sense, Foley's fees are contingent in nature.

g. **Time Limitations Imposed by the Client or the Circumstances**. Many of the matters Foley has handled for the Committee during the Final Fee Period have required it to quickly and efficiently analyze and respond to various motions. In guiding the Committee through these motions, Foley has helped to preserve the value of the Debtor's assets and business and the Committee's interests therein.

h. **The Amount Involved and the Results Obtained**. During the Final Fee Period, Foley assisted the Committee's efforts to, among other things, respond to various motions including the Motion to Dismiss. Foley and the Committee obtained a significant result to have the Chapter 11 Case converted to one under Chapter 7 of the Bankruptcy Code – the only potential path available for unsecured creditors to receive a recovery. Foley submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of the Committee.

i. **The Experience, Reputation and Ability of the Professionals**. Foley has an extensive, diversified experience and expertise, including Foley's recognized expertise in the field of creditors' protections, creditors' rights, and the administration of cases under chapter 11 of the Bankruptcy Code. Foley's experience enabled it to perform the services described herein competently and expeditiously. In addition to its expertise in the area of restructuring and representation of creditors' committee, Foley called upon the expertise of its partners and associates in other practice areas to perform the wide ranging scope of legal work necessitated by this Chapter 11 Case, including corporate, tax, labor, data privacy, and litigation work.

j. **The Undesirability of the Case**. Foley does not consider this Chapter 11 Case to be undesirable.

k. **The Nature and Length of the Professional Relationship with the Client**. Foley has acted as counsel to the Committee since June 9, 2026, and has rendered services continuously to the Committee.

l. **Awards in Similar Cases**. Foley submits that the fees and expenses for which it seeks compensation and reimbursement in this Application are not excessive and are commensurate with the rates awarded in similar cases in the United States Bankruptcy Court for similar services rendered and results obtained.

43. In sum, the services rendered by Foley were necessary and beneficial to the Committee and were consistently performed in a timely manner commensurate with the types of issues involved in this Chapter 11 Case. Accordingly, approval of the compensation for professional services and reimbursement of expenses sought in this Application is warranted.

**NOTICE**

44. Notice of this Application will be provided in accordance with the procedures set forth in the Local Bankruptcy Rules. Foley respectfully submits that no further notice is required.

**CONCLUSION**

42. Foley respectfully requests that the Court enter an order, (a) awarding Foley compensation for professional and paraprofessional services provided during the Final Fee Period in the amount of $93,056.91, and reimbursement of actual, reasonable, and necessary expenses incurred in the Final Fee Period in the amount of $300.00 on a final basis; (b) approving the compensation and reimbursement of expenses as Chapter 11 administrative expenses entitled to priority under Section 503 of the Bankruptcy Code; and (c) granting such other relief as is appropriate under the circumstances.

September 15, 2026

Respectfully submitted,

**SUMMERS COMPTON WELLS LLC**

*/s/ David A. Sosne*
David A. Sosne (28365 MO)
903 South Lindbergh Blvd., Suite 200
St. Louis, MO 63131
Telephone: (314) 991-4999
Email: dsosne@scw.law

-and-

**FOLEY & LARDNER LLP**

Geoffrey S. Goodman (admitted *pro hac vice*)
321 North Clark Street, Suite 3000
Chicago, IL 60654
Telephone: (312) 832-4514
Email: ggoodman@foley.com

-and-

Timothy C. Mohan (admitted *pro hac vice*)
1144 15th Street, Suite 2200
Denver, CO 80202
Telephone: (720) 437-2014
Email: tmohan@foley.com

*Counsel for the Official Committee of Unsecured Creditors*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was filed electronically on September 15, 2026 with the United States Bankruptcy Court for the Eastern District of Missouri and has been served on the parties in interest via e-mail by the Court's CM/ECF System as listed on the Court's Electronic Mail Notice List. I further certify that a true and correct copy of the foregoing document has also been served by Regular United States Mail Service, first class, postage fully pre-paid, addressed to those parties listed below on September 15, 2026.

| | |
|---|---|
| **Broadway Ford Truck Sales, Inc.**<br>812 E. Taylor<br>Saint Louis, MO 63147 | **Central States, Southeast & Southwest Areas Pension Fund**<br>Attn: Brad Berliner and Anthony Napoli |

| | |
|---|---|
| | 8647 W. Higgins Road, 8th Floor<br>Chicago, IL 60631 |
| **Knapheide Manufacturing Co.**<br>Attn: Tim Fraise<br>1848 Westphalia Strasse<br>Quincy, IL 62305-7140 | **Honda of Frontenac**<br>Attn: Chris Hennekes<br>885 S. Lindbergh Boulevard<br>St. Louis, MO 63131 |
| **Tracy A. Brown**<br>Tracy A. Brown Chapter 7 Trustee<br>1034 South Brentwood Blvd<br>Suite 1850<br>St Louis, MO 63117 | |

/s/ Christina Hauck
Christina Hauck

**EXHIBIT A**

**Certification of Geoffrey S. Goodman**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:**<br><br>**BROADWAY FORD TRUCK SALES, INC.,**<br><br>**Debtor.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 26-42179-357**<br>**Chapter 11** |

**CERTIFICATION OF GEOFFREY S. GOODMAN IN SUPPORT OF THE FIRST AND FINAL FEE APPLICATION OF FOLEY & LARDNER LLP FOR COMPENSATION OF PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED AS COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE FINAL PERIOD FROM JUNE 9, 2026, THROUGH JULY 30, 2026**

I, Geoffrey S. Goodman, hereby certify that:

1. I am a partner of the firm, Foley & Lardner LLP at 3201 N. Clark Street, Suite 3000 Chicago, IL 60654 ("Foley").

2. This certification is made in connection with Foley's fee application dated September 14, 2026 (the "Application"),[3] for compensation and reimbursement of expenses for the final period from June 9, 2026, through and including July 30, 2026 (the "Final Fee Period"). I have reviewed the Application and hereby certify that the Application complies with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines for Compensation, the Fee Guidelines, and the Retention Order.

[3] Terms capitalized but not otherwise defined herein shall have the meanings ascribed to them in the Application.

3. I certify that Foley has complied with provisions of the Bankruptcy Local Rule 2016-2(B) requiring it to submit monthly statements of Foley's fees and disbursements to the Master Service List of Bankruptcy Local Rule 9013-3(D).

4. In accordance with the Fee Guidelines, Foley responds to the questions identified therein as follows:

> Question 1: Did Foley agree to any variations from, or alternatives to, Foley's standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the Final Fee Period? If so, please explain.
>
> > Answer: Other than Foley's agreement to a percentage discount for certain of its timekeepers, Foley did not agree to any variations from, or alternatives to, its standard or customary billing rates for services pertaining to this engagement that were provided during the Final Fee Period.
>
> Question 2: If the fees sought in the Application as compared to the fees budgeted for the time period covered by the Application are higher by 10% or more, did Foley discuss the reasons for the variation with the client?
>
> > Answer: Not applicable.
>
> Question 3: Have any of the professionals included in the Application varied their hourly rate based on geographic location of the bankruptcy case?
>
> > Answer: No.
>
> Question 4: Does the Application include time or fees related to reviewing or revising time records or preparing, reviewing or revising invoices? If so, please quantify by hours and fees.
>
> > Answer: No.
>
> Question 5: Does the Application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify hours and fees.
>
> > Answer: No.
>
> Question 6: Does the Application include any rate increases since Foley's retention in the Chapter 11 Case? If so, did the client review and approve those rate increases in advance? Did the client agree when retaining the law firm to accept all future rate increases?
>
> > Answer: Yes.

Dated: September 14, 2026

FOLEY& LARDNER LLP

By: */s/ Geoffrey S. Goodmn*
Geoffrey S. Goodman
Counsel for the Committee

# EXHIBIT B

**Schedule of Foley & Lardner LLP Attorneys and Paraprofessionals for Final Period**

| Timekeeper | Title | Department | Billing Rate | Hours | Fees |
|---|---|---|---|---|---|
| Geoffrey S. Goodman (GSG) | Partner | Bankruptcy | $1,175 | 2.50 | $2,937.50 |
| Timothy C. Mohan (TCM) | Senior Counsel | Bankruptcy | $950 | 94.10 | $83,220.00 |
| Nathan C. Walsh (NCW) | Associate | Bankruptcy | $650 | 27.80 | $8,263.91 |
| Zachary C. Zahn (ZCZA) | Associate | Bankruptcy | $675 | 2.10 | $1,417.50 |
| Janelle C. Harrison (JCH) | Paralegal | Bankruptcy | $420 | 7.40 | $3,108.00 |
| | | | **TOTAL** | **133.90** | **$98,946.91**[4] |

[4] This amount reflects Foley's Voluntary Fee Reduction in the amount of $30,000.00.

# EXHIBIT C

**Schedule of Foley & Lardner LLP Professional Services by Task Code for Final Fee Period**

| Task Code | Hours | Fees |
|---|---|---|
| B110 – Case Administration | 35.20 | $28,291.88 |
| B120 – Asset Analysis and Recovery | 7.30 | $6,980.00 |
| B130 – Asset Disposition | 1.40 | $1,375.00 |
| B150 – Meetings of and Communications with Creditors | 0.20 | $235.00 |
| B160 – Fee/Employment Applications | 23.40 | $11,250.19 |
| B190 – Other Contested Matters | 31.30 | $22,675.33 |
| B230 – Financing/Cash Collections | 35.10 | $28,139.51 |
| **TOTAL** | **133.90** | **$93,056.91**[5] |

[5] This amount reflects Foley's Voluntary Fee Reduction in the amount of $30,000.00.

# EXHIBIT D

**Schedule of Expenses by Expense Category for Final Fee Period**

| Expense Category | Total Expenses |
|---|---|
| Filing Fees | $300.00 |
| **TOTAL** | **$300.00** |

# EXHIBIT E

**Foley Invoice for Final Fee Period**